IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEASLEY, | No. C 06-05053 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Shane Beasley ("Plaintiff") challenges Defendant's denial of Plaintiff's disability claim. Plaintiff makes three related assertions: (1) the Administrative Law Judge ("ALJ") improperly failed to find that Plaintiff's chronic pain condition was a "severe" impairment; (2) the ALJ improperly failed to include the nonexertional limitations imposed by the chronic pain in the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"); and (3) the ALJ failed to include Plaintiff's need to use a cane to ambulate in his RFC finding.

The ALJ's determinations and conclusions are rational and supported by substantial record evidence. His written decision includes specific reference to the evidence relied on to reach his conclusions, and his rationale is well explained. Accordingly, Plaintiff's motion for Summary Judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Income Security benefits under Titles XVI and XIX of the Social Security Act on March 24, 2004.  The Social Security Administration denied the application initially and again on reconsideration.  Plaintiff made a timely request for a hearing and the hearing was held before an ALJ on July 22, 2005.   In a written decision dated December 2, 2005, the ALJ denied Plaintiff's application.  The ALJ concluded that Plaintiff's medical evidence "fails to establish that the claimant has an impairment or combination of impairments" under Social Security regulations.  The ALJ found that "claimant is not 'disabled' within the meaning of the Social Security Act at any time beginning January 1, 2000 and continuing through the date of this decision."

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council.  The Council denied Plaintiff's request for review on June 30, 2006.  Pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3), Plaintiff filed the present action seeking an order reversing the ALJ's determination, or in the alternative, seeking a remand to the Social Security Administration for further proceedings.

## FACTUAL BACKGROUND

### A.   Plaintiff's Disability Claim

Plaintiff was born on January 7, 1960.  He is not a high school graduate but does have a GED.  Prior to his injury, Plaintiff worked for 10-15 years in construction.  Plaintiff bases his claim of disability on the combined effects of degenerative disc disease, chronic migraine headaches, hiatus hernia, GERD, and bilateral carpal tunnel.  Plaintiff contends that these conditions limit him to less than sedentary work and "preclude him from performing any substantial gainful activity."  He also suffers from anxiety, depression, reflux esophagitis, and esophageal inflammation.

### B.   Plaintiff's Testimony

Plaintiff was 45 years old at the time of the hearing and has one child.  He walks with the assistance of a cane.  He refused to use the cane for awhile and only began to use it when the pain started to get really "bad."  Plaintiff last worked in 1999.  He worked in construction

2

as a carpenter and was paid under the table. Work was very irregular, so Plaintiff could not give an estimate of how many months he worked during the average year.

On two occasions Plaintiff was convicted of felonies; for second degree burglary in 1989 and possession of methamphetamine with intent to sell in 1994. In 1999, Plaintiff violated his parole and was sent back to prison. While at Soledad State Prison for the violation of his parole, Plaintiff had a full-time job in the administrative building. One of the requirements of his job was that he carry boxes of records up and down two flights of stairs. It was in the course of performing this job that Plaintiff suffered the back injury which is the cause of his inability to work. He has not worked since he was released from prison.

Plaintiff is unable to work because of his severe back pain. He can barely roll out of bed and has severe difficulty walking. No doctor has recommended surgery on his back but he has been referred to a pain clinic. Plaintiff has trouble eating foods such as red meat and bread because of problems with his esophagus. He also suffers from sporadic migraine headaches. Plaintiff stated that other than his back, the only thing limiting the type of work he can do is carpal tunnel.

Plaintiff spends the majority of his day watching television in bed. He is able to stand with a cane for five minutes before he needs to sit down. Plaintiff can walk about half a block before he has to sit down and take a break.

**C.    Medical Evidence**

In 2001 Plaintiff underwent an MRI at the Contra County Regional Medical Center. The MRI revealed moderate left neuroforaminal stenosis at L3-4 due to disc herniation/bulging and possible endplate spurring, a small central disc protrusion at L1-2, and a minor disc bulging at L4-5 with focal annular tear. The examining neurosurgeon noted Plaintiff's chronic pain and questioned whether "pain behavior exceeds pain perception." The neurosurgeon based his doubts on the normal results of testing and the patient's other alleged symptoms of pain. In the same month, Plaintiff underwent a musculoskeletal evaluation. The examining doctor added to the previous diagnosis of degenerative disc disease with a finding of chronic lumbar sprain/strain. This doctor agreed with the

3

examining neurosurgeon that the Plaintiff was exaggerating his pain and found the Plaintiff was engaged in chronic pain behavior.

Plaintiff has been under the care of pain management specialist Howard Kornfeld, M.D., for his chronic pain since July 18, 2001. Dr. Kornfeld has prescribed Plaintiff a number of medications for the pain in his back: Methadone (a narcotic analgesic), Neurontin, Gabatril, Topamax (anticonvulsants), and Librium (tranquilizer). In a letter dated May 31, 2002, Dr. Kornfeld opined that Plaintiff "is completely disabled in terms of his ability to work at this time," due to his chronic pain.

On September 28, 2001 consulting orthopedist Ka-Siu Lai, stated Plaintiff was exhibiting chronic pain behavior.

On September 6, 2002, pain management specialists Francis Pecoraro, M.D. and Fellow Douglas Grant, M.D., diagnosed chronic low back pain along with muscle spasm and likely degenerative disc disease. They endorsed the medications provided to Plaintiff by Dr. Kornfeld and Dr. Lai. They made their findings without reviewing the MRI report.

On July 24, 2003, primary care physician Stephen Kalkstein, M.D., gave a primary diagnosis of chronic back pain.

On June 22, 2004, consultative psychiatric examiner Stefan Lampe, M.D., assessed Plaintiff with chronic pain and migraines. He concluded that from a psychiatric standpoint, not considering Plaintiff's physical issues, Plaintiff should be able to withstand the stress and pressure of an eight-hour work day on an ongoing basis.

Plaintiff was seen by internal medicine consultative examiner Sam Sundar, M.D., on July 2, 2004. Dr. Sundar noted that Plaintiff had constant moderate pain due to injuries to his upper thoracic spine as well as his lumbar spine. He also opined that Plaintiff had moderate insomnia secondary to his lower back pain. He found that Plaintiff is able to walk 2-3 blocks with occasional rest periods. He also found that Plaintiff can occasionally life weights of up to 20-30 pounds and that he has no problems in reaching, handling or feeling objects and can sort and handle paper as needed.

4

1 In October 2004, Plaintiff reported that his back pain was the same and described it as
2 tolerable.   He also noted that it hurt more on some occasions than others.

3 A lumbar spine MRI performed in July 2005 revealed Plaintiff's lower back
4 impairment "had, perhaps, *improved* since his last MRI in 2001." The MRI showed mild
5 degenerative disc desiccation, narrowing, and bulging which had only slightly progressed
6 since the 2001 MRI.  Mild foraminal stenosis bilaterally at L2-3, left L3-4, and mild left L3-4
7 lateral recess stenosis were also revealed in the MRI.  Finally, the MRI noted Plaintiff did not
8 suffer any focal disc herniation, any nerve root impingement, or any spinal canal stenosis.

## D. The ALJ's Decision

The ALJ followed the sequential steps established under the Social Security regulations at 20 CFR § 416.920 *et seq*.  At Step One, the ALJ determined Plaintiff had not performed any substantial gainful activity since his alleged disability onset date of January 1, 2000.

At Step Two, the ALJ determined that Plaintiff's degenerative disc disease with peripheral neuropathy was severe within the meaning of Social Security regulations. The ALJ did not find Plaintiff's alleged mental health impairment, hiatal hernia, gastroesophageal reflux disease, carpal tunnel, or migraine headaches to be severe.  In rejecting Plaintiff's claim that his migraines are a severe impairment, the ALJ noted that in addition to the lack of objective evidence, he found that the Plaintiff was not credible.

At Step Three, the ALJ found that Plaintiff did not have any impairment which met or equaled the criteria of any listed impairments in Appendix 1 of the regulations.  Plaintiff supported his argument that he met the listing under 1.04 by pointing to his need to use a cane and X-ray results.  The ALJ found no evidence of root nerve compromise or pseudoclaudication as required by Listing 1.04.  He also noted that there was no prescription for a cane and that a single pointed cane is not indicative of an inability to ambulate effectively.

Next, the ALJ determined Plaintiff's RFC.  He determined that Plaintiff's lower back impairment did not rise to the level of severity which would preclude him from performing

5

all work.  In support of his findings, the ALJ noted the lack of compelling objective findings of impairment, and Plaintiff's credibility problems.  He stated he was "more persuaded by the state agency doctors' opinions of the claimant's functional capacity than by the claimants recitations of his subjective symptoms."  The ALJ also refuted Plaintiff's contention that he is limited to sedentary work because it was premised on a finding that Plaintiff's headaches, carpal tunnel, and GERD were severe, which the ALJ did not find.  The ALJ concluded that Plaintiff had the RFC to carry and lift 10 pounds frequently and 20 pounds occasionally, to sit for six hours in an eight-hour workday, and to stand and walk for a total of six.

At Step Four, the ALJ had to determine whether Plaintiff retained the capacity to return to his past relevant work.  As Plaintiff did not have any past relevant work, the ALJ proceeded to Step Five.

The ALJ had to determine whether Plaintiff could perform any work which exists in significant numbers in the national economy in light of his RFC.  A vocational expert testified at Plaintiff's hearing that an individual with claimant's age, education, work experience, and RFC would be able to perform two jobs.  The first job, product assembly, has 3,000 jobs locally and 250,000 nationwide.  The second, mail clerk, has 2,000 jobs locally and 150,000 jobs nationwide.  Based on these findings, the ALJ determined Plaintiff could perform jobs that exist in significant numbers in the national economy and that Plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ also noted that he would not have found Plaintiff disabled or unable to perform a job which exists in significant numbers in the national economy even if he were to accept claimant's claim that he is limited to lifting and carrying ten pounds, standing and walking for two hours total and no more than 10 minutes at a time, and sitting six hours in eight, alternating sitting and standing and using a straight cane at will.  The vocational expert testified that even with these limitations, Plaintiff could perform the jobs of final assembler, of which there are 1,500 jobs locally and 40,000 jobs nationwide, and semi-conductor machine tender, of which there are 4,000 jobs locally and 150,000 jobs nationwide.  The ALJ therefore concluded that even if Plaintiff's claim of his functional

limitation was correct, he would, nonetheless, find the claimant not to be disabled as defined by the Social Security Act.

## LEGAL STANDARD

The Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if it is a decision based on legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The decision of the ALJ must be upheld if the evidence is "susceptible to more than one rational interpretation." Id at 1040.

## DISCUSSION

Plaintiff first argues that the ALJ erred by failing to find Plaintiff's chronic pain condition to be a "severe" impairment at step two in the analysis and therefore likewise erred by failing to consider his limitations as a result of the pain condition in determining Plaintiff's RFC.

Plaintiff has not met his burden of proving error. The ALJ considered the state agency physician's opinion, confirmed by another consulting physician, that Plaintiff's alleged pain was "way out of proportion" to the objective findings in the record. Further, as the government points out in its cross-motion, Plaintiff does not even identify how, exactly, the chronic pain affects his RFC. Moreover, the evidence in the record suggests that his pain is not affecting him mentally as the consultative examiner found that Plaintiff did not have a determinable mental health impairment and also found that Plaintiff could understand, remember, concentrate, and follow instructions. Lastly, the ALJ made specific findings as to why he did not find Plaintiff's testimony credible as to his subjective symptoms and Plaintiff does not challenge those findings here.

The Court recognizes that the ALJ erred when he stated that there was no support in the record for Plaintiff's assertion that Dr. Kornfeld prescribed him Seroquel. This erroneous finding, however, was made in the context of his conclusion that Plaintiff does not suffer from a severe mental health impairment and that finding is otherwise amply supported by the record; there is simply no evidence that Plaintiff suffers from a severe mental health impairment.

Plaintiff also argues that the ALJ erred by not considering Plaintiff's limitations from his chronic pain at steps 4 and 5. The ALJ, however, accepted that Plaintiff suffered from degenerative disc disease, but noted that no examining or reviewing physician found that the objective findings of such impairment supported Plaintiff's complaints of pain. The ALJ also noted that a July 2005 MRI showed that Plaintiff's back impairment had improved since his last MRI in 2001. Finally, in determining the RFC, the ALJ relied on state agency physicians' opinions of Plaintiff's functional capacity, namely, that he had the capacity to lift 20 pounds occasionally and 10 pounds frequently, to stand and/or walk six hours in an eight-hour day, and to sit about six hours in an eight hour day. Plaintiff points to nothing in the record that convinces this Court that the ALJ's reliance on these opinions was error.

Finally, Plaintiff argues that the ALJ committed erred by not including the use of a cane to ambulate in his RFC finding. Specifically, Plaintiff alleges that "the record is replete with *endorsements* by treating and examining physicians for the use of a single point cane to ambulate." Plaintiff's Motion for Summary Judgment at 22 (emphasis added). A review of the authorities cited by the Plaintiff for this contention reveals that they are mere observations by the physicians that the Plaintiff was using a cane and not endorsements. There is no objective evidence in the record to support his assertion that a physician advised Plaintiff to use a cane.

Moreover, the ALJ noted in the RFC finding that Plaintiff testified his use of a cane was one of his limitations. The ALJ explained, however, that because of the lack of any objective findings and Plaintiff's credibility problems, he was "more persuaded by the state agency doctor's opinions of the [Plaintiff's] functional capacity than by the [Plaintiff's]

8

1 recitations of his subjective symptoms." Plaintiff has failed to convince the Court that the
2 ALJ, who had the opportunity to view the Plaintiff in person, committed error.

### CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion is GRANTED.

**IT IS SO ORDERED.**

Dated: August 28, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE